UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-191 (ECT/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FEISAL MOHAMED ELMI,<br><br>Defendant. | **GOVERNMENT'S MOTION TO REVOKE PRETRIAL RELEASE** |

The United States of America, by and through its undersigned attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, Rebecca E. Kline, Assistant United States Attorney, and Sara E. Porter, Deputy Chief, and Manu J. Sebastian, Trial Attorney, of the National Fraud Enforcement Division, respectfully moves the Court to revoke the defendant's pretrial release pursuant to 18 U.S.C. §§ 3142 and 3148, for violations of the Court's Order Setting Conditions of Release dated October 29, 2026. Dkt. 8.

Three days ago, the government learned that Feisal Mohamed Elmi has engaged in repeat efforts to violate the conditions of his pretrial release by engaging in witness tampering and obstruction of justice. Given the highly concerning nature of this discovery, the government respectfully requests that the Court revoke Elmi's pretrial release and detain him pending trial pursuant to 18 U.S.C. § 3148(b).

## BACKGROUND

On October 22, 2026, a grand jury returned an 11-count indictment charging Elmi with orchestrating and carrying out a scheme to defraud the Minnesota Early

Intensive Developmental and Behavioral Intervention ("EIDBI") Benefit program, a Medicaid benefit program designed to provide medically necessary early intensive intervention for people with autism spectrum disorder. *See* Dkt. 1. Elmi, through his company Aspen Associates LLC ("Aspen"), is alleged to have exploited this program to obtain and misappropriate millions of dollars in program funds that were intended as reimbursements for the cost of services provided to children. *Id.* In all, Elmi claimed to be entitled to more than $7.4 million in EIDBI Program funds, and he fraudulently misappropriated more than $2.8 million of that sum. *Id.*

On October 29, 2026, Elmi made his initial appearance in the case. *See* Dkt. 6. Attorney Caroline Brunkow appeared on Elmi's behalf, where she informed the Court that she had represented Aspen since April 2026. Elmi then requested that the Court appoint Ms. Brunkow to represent him in this criminal matter, which the Court granted. *See* Dkt. 10. The Court ordered Elmi released, subject to certain conditions, including that he not violate any federal law while on release. Dkt. 8 at 1.

Following Elmi's initial appearance, the government learned that Elmi did not intend to waive his right to a speedy trial and would be seeking a trial date forthwith. In preparation, the government began reaching out to potential trial witnesses, several of whom law enforcement had previously interviewed during its pre-indictment investigation. Two of those witnesses reported to law enforcement that Elmi contacted them during the first week of November, shortly after he made his initial appearance before this Court, and instructed them not to speak with law enforcement.

First, on November 10, 2026, law enforcement contacted Witness 1, a former Aspen employee, to schedule a trial preparation meeting. Witness 1 reported to law enforcement that Elmi contacted him/her on approximately Thursday, November 5 or Friday, November 6 and instructed him/her not to speak with law enforcement. Witness 1 reported that Elmi said that his attorney, Caroline Brunkow, would represent Witness 1 and that Witness 1 should give law enforcement her name and telephone number when law enforcement contacted him/her again. Witness 1 further reported that Elmi told Witness 1 that all former employees of Aspen were represented by Ms. Brunkow. Witness 1 then provided law enforcement with Ms. Brunkow's name and telephone number and declined to meet with them for trial preparation.

That same day, law enforcement also contacted Witness 2, another former Aspen employee, to schedule a trial preparation meeting. Witness 2 scheduled the meeting with law enforcement and then reported that s/he received a voicemail from Elmi "last week." According to Witness 2, Elmi indicated in the voicemail that Witness 2 had an attorney named "Caroline" and that this attorney represented all Aspen employees. Law enforcement concluded the call with Witness 2. Shortly thereafter, Witness 2 called law enforcement back and canceled the scheduled meeting. Witness 2 reported that s/he canceled the interview because s/he no longer wanted to be involved in the matter, especially after receiving the voicemail from Elmi.

On November 10, 2026, the government contacted Ms. Brunkow regarding Elmi's conduct and relayed its concerns that this constituted witness tampering. Ms. Brunkow responded that the situation was nothing more than a misunderstanding from Elmi that she would no longer be representing Aspen due to her individual representation of him in his criminal case. However, as the government pointed out to the defense, even if Ms. Brunkow had represented Aspen previously, at no point in time would it have been appropriate for Elmi to instruct witnesses not to speak to law enforcement. Additionally, Ms. Brunkow's representation that this was simply a misunderstanding is belied by the government's previous interactions with these same witnesses. Five Aspen employees were interviewed by law enforcement between April and October 2026 as part of the government's investigation. None of these witnesses ever mentioned Ms. Brunkow or the fact that they were represented by counsel and participated in interviews without counsel present. Further, at no point did Ms. Brunkow ever reach out to the government on behalf of any of the Aspen employee witnesses. Accordingly, all of the conduct appears to have taken place after Elmi was indicted, at which point Ms. Brunkow would have been conflicted from representing anyone else involved at Aspen.

Because of Elmi's unlawful contact and misrepresentations, both Witness 1 and Witness 2 were corruptly persuaded not to speak with law enforcement about the commission of a federal offense, in violation of 18 U.S.C. 1512(b)(3). Such a blatant violation must result in a revocation of Elmi's pretrial release under 18 U.S.C. § 3148.

The government contacted defense counsel prior to filing this motion and defense counsel opposes the relief requested herein.

## ARGUMENT

Elmi's release should be revoked and he should be ordered detained pending trial. A person released pursuant to 18 U.S.C. § 3142 is subject to revocation upon violating conditions of release. 18 U.S.C. § 3148. Pursuant to that statute, the Court "shall revoke and detain a defendant" if, after a hearing, the Court:

> (1) finds that there is—
>
> > (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> >
> > (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
> > (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> >
> > (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

"If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b)(2)(B). Accordingly, if this Court finds that probable cause exists that a defendant committed

the offense of obstruction of justice, or witness tampering, a rebuttable presumption of detention arises.

Those conditions are met here.

**A. Witness Tampering**

First, there is probable cause to believe that Elmi committed the federal crime of witness tampering by corruptly persuading witnesses not to speak with law enforcement. Pursuant to 18 U.S.C. § 1512(b)(3), a defendant is prohibited from corruptly persuading another person, or attempting to do so, or engaging in misleading conduct toward another person, "with intent to hinder, delay, or prevent the communication to a law enforcement officer" of information relating to the commission or possible commission of a Federal offense. Elmi contacted at least two former employees who are witnesses whom the government intended to call to testify at trial and instructed them not to speak with law enforcement. Elmi misrepresented that his lawyer represented these and other Aspen witnesses, despite that conflict of interest rules likely would prevent such dual representation. Prior to Elmi's contact with these witnesses, they had not expressed hesitation about meeting with the government. Elmi's actions are criminal. His attempts at tampering with possible key witnesses in his forthcoming trial corrupts these proceedings. The Court should revoke his pretrial release and detain him pending trial.

**B. Detention is Necessary**

The defendant by his actions can forfeit pretrial release and "the court is under a duty to protect its processes and to protect prospective witnesses." *See United States*

*v. Smith*, 444 F.2d 61, 62 (8th Cir. 1971). Elmi's conduct demonstrates a blatant disregard for authority and accountability, and that modifying his release conditions would neither deter further misrepresentations nor remedy the harm caused by his witness tampering. Rather, his actions establish that no condition or combination of conditions can reasonably assure the safety of the community—including protection against further witness tampering—or his compliance with release conditions.

Travel records indicate that Elmi booked a one-way ticket to the United Kingdom after news reports were published reporting that a social worker, who was associated with his business, was indicted; a clear attempt to avoid any legal ramifications of his fraudulent conduct. Then, after being indicted for allegedly defrauding a public-benefit program and arrested, Elmi continued to engage in conduct based on misrepresentation. Elmi began calling his former employees and falsely claimed that his attorney would represent them and that they should not meet with law enforcement. Elmi's conduct thus demonstrates that a simple modification of his release conditions will not deter his conduct. In fact, Elmi's conduct evidences that only detention can prevent further interference with the judicial process and the Court has a duty to protect its processes. *Id.* Elmi should not be allowed another opportunity to interfere with the judicial process.

Under 18 U.S.C. § 3142(g), the Court shall take into account the available information concerning, among others: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) family ties, employment, financial

resources, past conduct, and criminal history; (B) whether, at the time of the current offense or arrest, the person was released pending trial; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release."

Elmi was indicted by a federal grand jury for organizing and perpetrating a complex healthcare fraud scheme involving millions of dollars in taxpayer funds and he faces a maximum penalty of 10 years imprisonment. *See* Dkt. 1. There is significant evidence against Elmi. The government is in the process of producing over 1.4 terabytes of discovery to Elmi's attorney and there are several witnesses the government planned to call to corroborate this evidence at trial. Elmi has violated and continues to violate the law. Elmi is a flight risk and has limited ties to the community. Some time after another individual associated with his company, Aspen, was indicted, Elmi booked a one-way ticket to travel internationally. Elmi's attorney also reported that Elmi's entire family, including his small children, recently moved internationally. The evidence also indicates that Elmi has sent over $500,000 to Africa and recently purchased property in Africa. While on supervised release, Elmi engaged in witness tampering where he corruptly persuaded at least two witnesses to avoid speaking with law enforcement, and the government has reason to believe Elmi contacted other former employees to corruptly persuade them not to speak with law enforcement while the government prepares for the trial against him.

Elmi's actions cannot be tolerated. "A trial court has the inherent power to confine defendants to protect witnesses and to prevent defendants from tampering

with witnesses." *United States v. Kirk*, 534 F.2d 1262, 1280 (8th Cir. 1976). This Court has routinely revoked pretrial release when defendants tamper with witnesses. *See United States v. Bock,* No. 22-cr-223 (NEB/DTS), ECF No. 517 (D. Minn. Feb. 19, 2025) (where the court revoked pretrial release because the defendant made a cooperating witness promise not to testify against him); *see also United States v. Hassan*, No. 22-cr-224 (NEB/TNL), ECF No. 421 (D. Minn. Oct. 6, 2025) (where the court revoked pretrial release because the defendant attempted to speak with a witness prior to his testimony at trial). The government submits that the Court has been right before to exercise zero tolerance for attempted obstruction, and it should do the same here.

## CONCLUSION

Elmi's attempted witness tampering makes it clear that he is unlikely to abide by the conditions of his release. His pretrial release should be revoked.

Dated: November 13, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division

/s/ Manu J. Sebastian

BY: REBECCA E. KLINE
Assistant United States Attorney
SARA E. PORTER
Deputy Chief, Health Care Fraud Section
MANU J. SEBASTIAN
Trial Attorney
United States Department of Justice
National Fraud Enforcement Division